UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>IESHA NICOLE ARMSTRONG,<br><br>Defendant. | Criminal Action No. TDC-16-0601 |

**MEMORANDUM ORDER**

For the third time, Defendant Iesha Nicole Armstrong has filed a Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). ECF No. 79. After pleading guilty to armed bank robbery, in violation of 18 U.S.C. §§ 2113(a) and (d), and using, carrying, and brandishing a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c), Armstrong was sentenced on February 9, 2018 to a total of 168 months of imprisonment to be followed by five years of supervised release. Armstrong is presently designated to the Federal Correctional Institution Hazelton ("FCI-Hazelton") in Bruceton Mills, West Virginia and scheduled to be released on October 21, 2028. In her Motion, Armstrong seeks a reduction of her sentence under a statutory provision commonly referred to as the "compassionate release" provision because of the COVID-19 pandemic, the conditions of confinement at FCI-Hazelton, and her personal medical conditions.

**DISCUSSION**

Ordinarily, "[t]he court may not modify a term of imprisonment once it has been imposed . . . ." 18 U.S.C. § 3582(c) (2018). This general rule is subject to certain exceptions, including the compassionate release provision, which allows the Bureau of Prisons ("BOP") to seek a modification of a prisoner's sentence. *See id.* § 3582(c)(1)(A). Under the First Step Act of 2018,

the compassionate release provision was modified to also allow prisoners to seek a sentencing reduction directly from the Court. The provision now provides, in relevant part, that:

> The court may not modify a term of imprisonment once it has been imposed except that:
>
> (1) in any case that—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction;
>
> \* \* \*
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

*Id.* Armstrong has submitted proof that she has satisfied the requirement to exhaust administrative remedies, and the Government agrees that she has done so.

The present Motion is Armstrong's third attempt to achieve early release from her 14-year sentence under the compassionate release provision based on the COVID-19 pandemic and her medical issues. The Court denied the first two, on August 10, 2020 and October 8, 2020, and the United States Court of Appeals for the Fourth Circuit affirmed the Court's rulings on December 29, 2021. The Court incorporates its prior rulings herein by reference. ECF Nos. 62, 69.

I. **Extraordinary and Compelling Reasons**

Armstrong now argues that the COVID-19 pandemic and her personal medical conditions present "extraordinary and compelling reasons" that justify a sentence reduction to time served,

possibly with home confinement as a condition of supervised release. 18 U.S.C. § 3582(c)(1)(A)(i). As with her earlier motions, she argues that she has various health conditions, consisting of type 2 diabetes, obesity, and mood disorders, that place her at higher risk for severe illness from COVID-19. She also argues that FCI-Hazelton is not taking sufficient measures to prevent the spread of COVID-19 within the facility, and that she is not receiving adequate treatment for diabetes and mood disorders.

The United States Centers for Disease Control and Prevention ("CDC") has identified diabetes, obesity, and mood disorders as conditions that make a person more likely to get very sick from COVID-19. *See Underlying Medical Conditions Associated with Higher Risk for Severe COVID-19*, Centers for Disease Control and Prevention (Feb. 15, 2022), https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-care/underlyingconditions.html. Since Armstrong's last Motion for Compassionate Release, however, circumstances have changed. Armstrong has contracted and recovered from COVID-19, and she is now fully vaccinated, as are a significant number of the other inmates at FCI-Hazelton. *COVID-19: Coronavirus*, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/index.jsp (last visited May 31, 2022) (noting that 3,123 inmates at FCI-Hazelton and the United States Penitentiary Hazelton have been fully vaccinated). For individuals who are fully vaccinated, the risk of death or severe illness from COVID-19 is substantially reduced. *See COVID-19 Vaccines Work*, Centers for Disease Control and Prevention (Dec. 23, 2021), https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/work.html; *see also What You Need to Know About Variants*, Centers for Disease Control and Prevention (Apr. 23, 2022), https://www.cdc.gov/coronavirus/2019-ncov/variants/about-variants.html (showing that the Omicron variant is "less severe in general"). Moreover, although FCI-Hazelton is operating at level 3—for BOP facilities with conditions

3

warranting more significant modifications in light of the medical isolation rate, facility vaccination rate, or community transmission rate—at the present time, FCI-Hazelton has only one active case of COVID-19 among either inmates or staff. *See COVID-19: Coronavirus*, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/index.jsp (last visited May 31, 2022). Thus, even if, as alleged by Armstrong, FCI-Hazelton is not actually following all required protocols, including the wearing of masks and certain sanitation standards, the Court finds that the present impact of COVID-19 on Armstrong, even with her high-risk conditions, does not constitute an extraordinary and compelling reason warranting a sentence reduction.

As for the argument that Armstrong is not receiving adequate medical care for her diabetes and mood disorders, a review of her medical records reveals regular treatment relating to diabetes, including since she arrived at FCI-Hazelton. Other than her own assertions, she has not provided a basis to conclude that her diabetes care is inadequate. As for her mood disorders, Armstrong was in a mental health chronic care program until 2019 when she apparently withdrew from it. Where Armstrong's FCI-Hazelton individualized needs plan, completed on January 13, 2022 shortly after her arrival, states that she is not in need of mental health treatment at this time, Armstrong may be correct that she is not presently receiving such treatment. Even if it is true that she is now in need of mental health care that she is not receiving, the mood disorders she has described do not constitute a type of mental health need that cannot be addressed within the BOP, so the solution would be to seek more enhanced medical and mental health care within the BOP, not to reduce her sentence by over eight years. Thus, although the Court encourages FCI-Hazelton to review Armstrong's medical and mental health conditions and assess whether additional care or transfer to a facility with enhanced treatment options is warranted, it does not find that Armstrong's

4

allegations of insufficient medical care for diabetes and mood disorders identify extraordinary and compelling reasons justifying a sentence reduction.

## II. 18 U.S.C. § 3553(a)

Even if there were extraordinary and compelling reasons sufficient to support a sentence reduction, the Court must still consider the factors in 18 U.S.C. § 3553(a) in assessing whether a sentence reduction is warranted. 18 U.S.C. § 3582(c)(1)(A)(i). Although some time has passed since the Court's last denial, the Court continues to conclude that early release would be inconsistent with these factors. The nature and circumstances of the offenses of conviction consisted of an armed bank robbery on October 21, 2016 in which Armstrong brandished a loaded firearm and pointed it at three bank employees, forced them to surrender over $12,000 in cash, and then led the police on a high-speed chase for 13 minutes before she crashed the car and fled on foot with the gun in one hand. PSR ¶¶ 13–16, ECF No. 39. As for her history and characteristics, Armstrong has a 2010 conviction for armed bank robbery, also involving the pointing of a firearm at a bank employee, from the United States District Court for the District of Columbia that resulted in an 84-month sentence. PSR ¶ 44. She was on supervised release for that conviction when she committed the present armed robbery. Armstrong also has two prior drug distribution convictions, one involving phencyclidine ("PCP") and one involving crack cocaine. PSR ¶¶ 39, 41. For purposes of her present sentence, Armstrong was in criminal history category IV. PSR ¶ 47. Although she has had mental health challenges, the extremely serious nature of this crime and Armstrong's prior history of violent and drug trafficking offenses warranted a significant sentence. Indeed, in the plea agreement, Armstrong agreed to a recommendation of a sentence of at least 156 months, or 13 years.

At present, Armstrong has served only approximately 67 months on her sentence of 168 months, a period of time that is only 40 percent of the total sentence and below the mandatory minimum seven-year sentence on the § 924(c) conviction. 18 U.S.C. § 924(c)(1)(A)(ii); PSR ¶ 84. Such a sentence, even with home confinement added as a condition of supervised release, and even considering the more difficult conditions of incarceration during the COVID-19 pandemic, is insufficient to reflect the seriousness of the offense, promote respect for the law, provide just punishment, provide adequate deterrence, and protect the public from further crimes. 18 U.S.C. § 3553(a). It is also so low that it would create unwarranted disparities with other defendants who have committed similar crimes, particularly with those who, like Armstrong, committed an armed bank robbery for the second time and while on supervised release. Although Armstrong has asserted that she has a positive history of post-offense rehabilitation, has represented in a letter to the Court that she has changed, and has provided several letters with positive attestations from family and friends, the Court finds that these positive additions to her history and characteristics do not alter the Court's broader conclusion. Accordingly, the Court will deny the Motion.

## CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Armstrong's Third Motion for Reduction of Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), ECF No. 79, is DENIED.

Date: June 1, 2022

THEODORE D. CHUANG
United States District Judge